UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | |
|---|---|
| JUAN RAFAEL ROSARIO #307537, ) | |
| ) | |
| Plaintiff, ) | Case No. 2:05-cv-91 |
| ) | |
| v. ) | HON. GORDON J. QUIST |
| ) | |
| CAROLE RAMBO, et al., ) | |
| ) | **OPINION** |
| Defendants. ) | |
| ) | |

    This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee.  Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996) ("PLRA"), the court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A.  The court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 595 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33, 112 S. Ct. 1728, 1733 (1992). Applying these standards, the court will dismiss Plaintiff's complaint, in part, for failure to state a claim.

**Discussion**

    I.       Factual Allegations

Plaintiff Juan Rafael Rosario, an inmate at the Kinross Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Physician's Assistant Carole Rambo, Corrections Officer Steve Morrison, Assistant Resident Unit Supervisor Kimberly A. Gilroy, Resident Unit Manager M. Perry, Administrative Deputy Warden of Housing Rick Faust, Health Unit Manager Karen Dennis, Physician's Assistant Mike Kennerly, Health Unit Manager Leslie Wight, Straits Correctional Facility, Hiawatha Correctional Facility, Kinross Correctional Facility, Correctional Medical Services, Inc., and Unknown Parties.

Plaintiff alleges that on June 18, 2003, he arrived at the Straits Correctional Facility. Plaintiff had previously been diagnosed with severe arthritis and had been prescribed "Noproxen 500 mg." In addition, Plaintiff was on a "bottom bunk" detail for medical reasons. On June 24, 2003, Plaintiff received a notice that his medication and bottom bunk detail were being discontinued by Defendant Rambo. On June 26, 2003, Defendant Morrison instructed Plaintiff to remove his bedding from the bottom bunk and place it on the top bunk. Plaintiff explained his physical difficulties and Defendant Morrison responded, "Gilroy is having you moved regardless." Plaintiff told Defendant Morrison that he was going to file a grievance and Defendant Morrison told Plaintiff that he would "see about that."

On June 26, 2003, Plaintiff was summoned to the medical department where a nurse reviewed his chart and told Plaintiff that he did not meet the criteria for a bottom bunk detail. Plaintiff then asked Defendant Gilroy if she could wait until Plaintiff was examined by a physician before assigning him to a top bunk. Defendant Gilroy refused Plaintiff's request, stating that she did

not care about policy and that Plaintiff would remain on top bunk detail until he left the Straits Correctional Facility. Later that day, while Plaintiff was attempting to climb up to his assigned bunk while using the plastic stool in his cell, the stool flipped over. Plaintiff fell against a locker, hitting his shoulder, and then landed on the floor on his back. Plaintiff was taken to the hospital by ambulance, where he was diagnosed with a sprained right shoulder and cervical spine. When Plaintiff returned to the prison, he was assigned the same top bunk.

Plaintiff claims that Defendants Morrison, Gilroy and Faust were aware that the little plastic stools in the prisoner cells were not safe for use in climbing up to the top bunk. In addition, Plaintiff states that each stool is marked "Warning: No Step." In addition, Plaintiff states that other inmates had been injured in the past as a result of using a plastic stool to climb onto the top bunk. Plaintiff alleges that Defendant Faust encouraged inmates to use the plastic stools to reach the top bunk. On June 30, 2003, Plaintiff was seen by Defendant Rambo, during which Defendant Rambo reiterated her prior finding that Plaintiff did not fit the criteria for a bottom bunk detail. However, Defendant Rambo did prescribe Naproxen and Tylenol for Plaintiff.

Plaintiff filed a grievance on Defendant Rambo for discontinuing the bottom bunk detail. Plaintiff was interviewed on this grievance by C. Jenkins, who stated that a medical detail should not be discontinued without examination by an appropriate medical service provider. The grievance response indicates that Plaintiff's medical record was evaluated by the medical service provider (M.S.P.) prior to the discontinuation of his bottom bunk detail, but that he was not actually examined by the M.S.P. until June 26, 2003. (See Response to Step I Grievance No. 03-07-0470-03f, attached as an exhibit to Plaintiff's complaint.) According to the step II and step III responses to this grievance, Defendant Rambo was qualified to discontinue the bottom bunk detail, but should

not have done so without first examining Plaintiff. (See Step II and III Responses to Grievance No. 03-07-0470-03f, attached as exhibits to Plaintiff's complaint.)

Plaintiff was then scheduled to see a physician on July 16, 2003. On July 24, 2003, Plaintiff informed Defendant Morrison that his legal documents contained allegations against Defendant Morrison, and that another officer should conduct the search of Plaintiff's cell. Defendant Morrison refused and ordered Plaintiff to go sit in the card room. On July 29, 2003, Plaintiff submitted a grievance on Defendant Morrison for the unauthorized reading of Plaintiff's institutional file. On July 31, 2003, Defendant Morrison came to Plaintiff's cell repeatedly and made verbal threats in an attempt to provoke Plaintiff. Plaintiff wrote a grievance on Defendant Morrison regarding this misconduct. Plaintiff asked Defendant Morrison why he was reading Plaintiff's legal documents and Defendant Morrison ordered Plaintiff to leave the area. Plaintiff then picked up his legal documents and complied with the order to leave. Plaintiff subsequently received two misconduct tickets for taking his legal documents with him.

On August 5, 2003, Plaintiff was transferred from the Straits Correctional Facility to the Hiawatha Correctional Facility. Plaintiff states that because he was no longer at Straits on August 7, 2003, the statement by Defendant Perry that he interviewed Plaintiff on his pending grievances on that date is obviously false. Plaintiff filed a grievance and a formal complaint on Defendant Perry for falsifying documents. From August 12, 2003, until March 8, 2004, Plaintiff submitted health care request forms seeking treatment for lower back pain, muscle spasms, and with regard to the discontinuation of his medication. Plaintiff was seen by a nurse, but not by a physician. In addition, Plaintiff was denied his six month review with a licensed physician. Plaintiff filed a grievance regarding the denial of appropriate medical care on March 10, 2004, and wrote a letter of

complaint regarding Defendant Dennis on April 9, 2004. Plaintiff states that since April 4, 2004, he has been submitting medical request forms complaining of numbness in his right leg and hip.

On July 29, 2004, Plaintiff was transferred to the Kinross Correctional Facility. On September 27, 2004, Plaintiff wrote a letter to Defendant Wight complaining about the numbness in his right leg and hip. Plaintiff also filed two grievances against Defendant Kennerly regarding the co-payment charges. On October 13, 2004, Plaintiff filed a step I grievance against the nurse for refusing to refer him to see a doctor. On January 31, 2005, Plaintiff filed a complaint against Defendants Kennerly and Wight with the "State of Michigan Department of Consumer & Industry Service, Bureau of Health Service Complaint and Allegation Division."

Plaintiff claims that Defendants' conduct violated his rights under the Eighth Amendment. Plaintiff seeks damages.

    II.    Failure to state a claim

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993), *cert. denied*, 510 U.S. 1177, 114 S. Ct. 1218 (1994). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2255 (1988); *Street v. Corrections Corp. of America*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271, 114 S. Ct. 807, 811 (1994).

Plaintiff's complaint seeks damages from Defendants Straits Correctional Facility, Hiawatha Correctional Facility, and Kinross Correctional Facility. An express requirement of 42 U.S.C. § 1983 is that the defendant be a "person." *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 98 S. Ct. 2018 (1978). The Straits Correctional Facility, Hiawatha Correctional Facility, and Kinross Correctional Facility are administrative units of the Michigan Department of Corrections. Neither a prison nor a state corrections department is a "person" within the meaning of section 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312 (1989). Furthermore, Plaintiff's claims against these defendants are barred by the Eleventh Amendment. *Alabama v. Pugh*, 438 U.S. 781, 782, 98 S. Ct. 3057, 3057-58 (1978). That amendment prohibits suits in federal court against the state or any of its agencies or departments unless the state has given express consent, regardless of the relief sought. *Pennhurst State School & Hosp. v. Haldermann*, 465 U.S. 89, 100, 104 S. Ct. 900, 908 (1984), overruled in part on other grounds, *Will*, 491 U.S. 58, 109 S. Ct. 2304. The State of Michigan has not consented to civil rights suits in the federal courts. *See Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). A state's Eleventh Amendment immunity is in the nature of a jurisdictional defense and may be raised on the court's own motion. *Estate of Ritter v. University of Michigan*, 851 F.2d 846, 851 (6th Cir. 1988). The Supreme Court has squarely held that the Eleventh Amendment bars federal suits against state departments of corrections. *Alabama v. Pugh*, 438 U.S. 781, 782, 98 S. Ct. 3057, 3057-58 (1978) (per curiam). Defendants Straits Correctional Facility, Hiawatha Correctional Facility, and Kinross Correctional Facility are therefore not subject to a section 1983 action.

Plaintiff claims that the discontinuation of his bottom bunk detail by Defendant Rambo and the denial of his previously prescribed medications by Defendants in the health care

profession constituted deliberate indifference in violation of the Eighth Amendment. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 2004 WL 2792016, at *7 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 2004 WL 2792016, at *6, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts

or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer*, 62 F.3d at 154-55; *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. April 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to

constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976); *see also*, *Brock v. Crall*, No. 00-5914, 2001 WL 468169, at *2 (6th Cir. April 27, 2001; *Jones v. Martin*, No. 00-1522, 2001 WL 223859, at *1 (6th Cir. Feb. 28, 2001); *Williams v. Mattson*, No. 99-1796, 2000 WL 924145, at *1 (6th Cir. June 28, 2000); *Davis v. Ulep*, No. 97-2124, 1999 WL 98390, at *1 (6th Cir. Jan. 29, 1999); *Cain v. Huff*, No. 96-1613, 1997 WL 377029, at * 4 (6th Cir. July 2, 1997); *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at * 2 (6th Cir. April 4, 1997).

In this case, Plaintiff was repeatedly seen by health care professionals, and was prescribed Naproxen and Tylenol at various times while under Defendants' care. Therefore, this case, like the one discussed in *Westlake v. Lucas*, is one in which Plaintiff received "some medical attention and the dispute is over the adequacy of the treatment." *Westlake*, 537 F.2d 857, 860 n. 5. Therefore, Plaintiff's claims against Defendants Rambo, Dennis, Kennerly, and Wight regarding the allegedly inadequate medical care are properly dismissed.

Plaintiff appears to be claiming that Defendant Morrison violated his rights by improperly writing misconduct tickets on him. The Supreme Court has held that a claim for monetary damages based upon allegations of deceit and bias that necessarily implies the invalidity of the punishment imposed, is not cognizable under § 1983 until the conviction has been overturned. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997). The Court relied upon *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), which held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,* a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *Edwards*, 520 U.S. at 646 (emphasis in original).

The Supreme Court recently revisited this issue in *Wilkinson v. Dotson*, 125 S. Ct. 1242 (Mar. 7, 2005), a case in which the plaintiffs claimed that the retroactive application of parole guidelines violated the Constitution's *Ex Post Facto* and Due Process Clauses. The plaintiffs sought a new parole eligibility review and a new parole hearing in accordance with the correct guidelines. *Wilkinson*, 125 S. Ct. at 1244. In *Wilkinson*, the Court discussed the effect of its decisions in *Heck* and *Edwards*, as well as *Preiser v. Rodriguez*, 411 U.S. 475 (1973) and *Wolff v. McDonnell*, 418 U.S. 539 (1974) on the issue:

> Throughout the legal journey from *Preiser* to *Balisok*, the Court has focused on the need to ensure that state prisoners use only habeas corpus (or similar state) remedies when they seek to invalidate the duration of their confinement--either *directly* through an injunction compelling speedier release or *indirectly* through a judicial determination that necessarily implies the unlawfulness of the State's custody. Thus, *Preiser* found an implied exception to § 1983's coverage where the claim seeks--not where it simply "relates to"-- "core" habeas corpus relief, *i.e.,* where a state prisoner requests present or future release. Cf. *post,* at ----5 (KENNEDY, J., dissenting) (arguing that *Preiser* covers challenges that "relate ... to" the duration of confinement). *Wolff* makes clear that § 1983 remains available for procedural challenges where success in the action *would not necessarily* spell immediate or speedier release for the prisoner. *Heck* specifies that a prisoner cannot use § 1983 to obtain damages where success *would necessarily* imply the unlawfulness of a (not previously invalidated) conviction or sentence. And *Balisok*, like *Wolff*, demonstrates that habeas remedies do not displace § 1983 actions where success in the civil rights suit would not necessarily vitiate the legality of not previously invalidated) state confinement. These cases, taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation)--no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)--*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration.

*Wilkinson*, 125 S. Ct. at 1247-48.  The Court then concluded that because the plaintiffs' claims did not necessarily imply the invalidity of their convictions or sentences, they could present these claims in the context of a § 1983 action.  *Id.* at 1248.

Thus, where a prisoner's claim of unfair procedures in a disciplinary hearing necessarily implies the invalidity of the deprivation of good-time credits, his claim is not cognizable under § 1983.  *Wilkinson*, 125 S. Ct. at 1247-48, *Edwards*, 520 U.S. at 646.  *See also Muhammad v. Close*, 124 S. Ct. 1303 (2004) (holding that the *Heck-Edwards* bar applies to prison misconduct challenges only when good-time credits are implicated).  In Michigan, a major misconduct conviction results in the loss of good-time credits, which is equivalent to a loss of a "shortened prison sentence."  *See Wolff v. McDonnell*, 418 U.S. 539, 556-57 (1974).  Accordingly, Plaintiff's claims regarding the misconduct convictions remain noncognizable under § 1983 because a ruling on the claim would, if established, necessarily imply the invalidity of his disciplinary convictions.  *See Shavers v. Stapleton*, No. 03-2210, 2004 WL 1303359, at *1 (6th Cir. June 9, 2004).

Plaintiff appears to be claiming that Defendant Perry violated his constitutional rights by falsely stating that he interviewed Plaintiff on grievances after Plaintiff had been transferred to another facility.  However, even assuming Plaintiff's allegations are correct, such conduct does not implicate any constitutional right.  The court notes that adoption of a prisoner grievance procedure is not mandatory under 42 U.S.C. § 1997e(b)(1).  *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).  Nor does the Constitution create an entitlement to grievance procedures "or access to any such procedure voluntarily established by a state."  *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994), *cert. denied*, 514 U.S. 1022 (1995).  Moreover, a Michigan state prisoner's right to use the grievance procedure is not derived from mandatory language in a regulation.  *Sandin v. Conner*, 515 U.S. 472,

484 (1995); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). Therefore, Plaintiff's claims against Defendant Perry are properly dismissed.

As noted above, Plaintiff states that he is suing "unknown parties." However, Plaintiff fails to allege any specific facts showing any unnamed individual violated his rights. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984). Therefore, Plaintiff's claims against "unknown parties" is properly dismissed.

Finally, Plaintiff claims that Defendants Morrison, Gilroy and Faust were all aware that prisoners used the plastic stools in their cells to access the top bunks, and that Defendant Faust actually encouraged such use. In addition, Plaintiff states that Defendants Morrison, Gilroy and Faust knew that the stools were not safe for such use, and that other inmates had previously been injured using the stools to reach the top bunk. Plaintiff asserts that because of his medical condition, he could not get up to the top bunk without the assistance of a step or stool, and that the plastic stool was his only option. Plaintiff claims that Defendants Morrison, Gilroy and Faust were deliberately indifferent in placing him in a situation were he was likely to suffer an injury from using the plastic stool. The court may not dismiss this claim on initial review.[1]

---

[1] *See Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (holding that a claim that a sleeping bunk was improperly installed, causing the prisoner to fall and sustain an injury constituted deliberate indifference).

**Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the court determines that Plaintiff's action is properly dismissed, in part, for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A(b); 42 U.S.C. § 1997e(c).

An order consistent with this opinion will be entered.


Dated:     July 1, 2005              /s/ Gordon J. Quist
                                     GORDON J. QUIST
                                     UNITED STATES DISTRICT JUDGE